[S. F. No. 11574. In Bank.—September 19, 1925.]

JAMES F. SHEEHAN, Respondent, v. BOARD OF POLICE COMMISSIONERS, etc., Appellants.

[1] MUNICIPAL CORPORATIONS—SAN FRANCISCO CHARTER—BOARD OF POLICE COMMISSIONERS—PENSION—JURISDICTION.—The San Francisco charter gives the power to the Board of Police Commissioners, sitting as trustees of the Pension Fund, to determine in the first instance whether or not the pensioner's disability has ceased, but such determination is not judicial in character, has no legal force whatever as such, and amounts to nothing more than an indication of the board's course of action in the premises.

[2] ID.—DISABILITY OF POLICE OFFICER—PENSION—VESTED RIGHT—TERMINATION OF DISABILITY—RIGHT TO JUDICIAL DETERMINATION.—A police officer of the city and county of San Francisco, who has been retired on pension for physical disability, has a vested

---

2. Vested right of firemen and police in pension, note, 50 L. R. A. (N. S.) 1018. See, also, 21 Cal. Jur. 410; 21 R. C. L. 240–244.

right to retain his place upon the retired list, and to have his pension continued until his disabilities shall have ceased; and having such a vested right, he is entitled to a judicial determination by a court of competent jurisdiction of the facts upon which it is claimed the right has ceased.

[3] ID.—RESTORATION TO PENSION ROLL — MANDAMUS — ABILITY OF OFFICER TO PERFORM POLICE DUTY—EVIDENCE.—In a proceeding by a police officer of the city and county of San Francisco, who was removed from the pension roll upon the asserted ground that his disability had ceased, against the Board of Police Commissioners of said city and county, sitting in different capacities, to compel the defendants to restore him to the pension roll, and to prohibit the defendants from proceeding to hear a charge pending against him for insubordination, or any charge against him based upon the alleged claim that his disability had ceased, the defendants were not prejudiced by the ruling of the trial court in permitting the police officer's physician to testify as to his competency to perform police duty, where the physician's testimony was not the only evidence before the court as to the police officer's physical condition.

[4] ID.—PENSIONS—JURISDICTION OF POLICE COMMISSION.—The Board of Police Commissioners of the city and county of San Francisco, acting in any capacity, has no judicial powers when dealing with the question whether the physical disability of a police officer of said city and county, who had been retired on pension, ceased. Such powers as it has are ministerial only.

[5] ID.—INSUBORDINATION.—In such proceeding, as the Board of Police Commissioners is without jurisdiction to judicially determine the question as to whether or not the police officer's incapacity had ceased, the charge of insubordination against the officer for having failed to obey the order of said board to report to the chief of police for active duty was without foundation.

[6] ID. — WHEN INSUBORDINATION CAN RIGHTFULLY BE PREDICATED. — Insubordination can rightfully be predicated only upon the refusal to obey some order which a superior officer is entitled to give and entitled to have obeyed.

---

(1) 28 Cyc., p. 534, n. 76 New.    (2) 28 Cyc., p. 534, n. 76 New. (3) 4 C. J., p. 997, n. 86; 22 C. J., p. 732, n. 90.    (4) 28 Cyc., p. 488, n. 59 New.    (5) 28 Cyc., p. 534, n. 76 New.    (6) 32 C. J., p. 948, n. 92.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Affirmed.

The facts are stated in the opinion of the court.

George Lull, City Attorney, and Charles S. Peery, Assistant City Attorney, for Appellants.

Chas. J. Heggerty and Peter F. Dunne for Respondent.

HOUSER, J., *pro tem.*—A petition for hearing of the appeal herein, after a decision thereon by division one of the first appellate district of the district court of appeal, was granted by this court. Further consideration of the questions presented by the appellants and the petitioners has led to the conclusion that that part of the opinion of the district court of appeal as prepared by Mr. Justice St. Sure of that court (hereinafter quoted) correctly expresses, in all essential particulars, the views of this court with reference thereto. It is as follows:

"Petitioner obtained writs of mandate and prohibition against defendants, as the Board of Police Commissioners of the City and County of San Francisco, and as the Board of Police Relief and Pension Fund Commissioners of the Police Department of said City and County, and also against the members of said Board of Police Commissioners, also against said members as Trustees of the Police Relief and Pension Fund. It was decreed that the action taken by defendants as Trustees of the Police Relief and Pension Fund, and as a Board of Police Pension Fund Commissioners, finding that the disability of petitioner had ceased and that his pension shall cease; that he be removed from the pension roll; that he be restored to service and report to the 'acting Chief of Police' for active duty, were a deprivation of petitioner's vested right and were void. And it was further decreed that the findings be set aside; that petitioner be restored to the pension roll, and that the pension to which he is entitled be paid to him; that petitioner recover his costs in the sum of $11.50, and for damages sustained by him in being deprived of the payment of his pension from November 15, 1920, he be allowed legal interest on the amount of the pension due and to become due until the same be paid to him. The judgment directed that a peremptory writ of mandate issue requiring defendants to perform the matters decreed. It was also adjudged that defendants be prohibited from proceeding to hear the charge now pending

before them for insubordination, or any charge against pe-
titioner based upon the alleged claim that the disability of
petitioner had ceased. Defendants appeal from the judg-
ment.

"Petitioner was appointed a member of the police de-
partment September 20, 1895, with rank of patrolman. On
August 1, 1899, he became physically disabled while in the
performance of duty. While breaking a horse to saddle for
the police department the horse shied, reared and fell back-
ward and upon petitioner, who received injuries about the
head and body resulting in total deafness in the right ear
and injuries to his brain which superinduced epileptic con-
vulsions. He was retired on a pension of fifty dollars per
month to be paid during his life and to cease on his death.
The San Francisco Charter (Article VIII, Chapter X, sec-
tion 3) provides that in case his disability shall cease his
pension shall cease. In January, 1904, petitioner was ar-
bitrarily removed from the pension roll and was ordered to
report for active duty, failing which he was dismissed from
the police department. Litigation to annul such proceedings
was then commenced and was finally terminated by the de-
cision of this court June 3, 1920. (See *Sheehan* v. *Board of
Police Commissioners*, 47 Cal. App. 29 [190 Pac. 51], and
its companion case, 47 Cal. App. 793 [190 Pac. 55].) The
*remittitur* was certified to the clerk of the court below, and
on July 6th, 1920, the defendants were served with the per-
emptory writ of mandate. Defendants met as the Board of
Pension Fund Commissioners on that date, spread the writ
on the minutes, restored petitioner to the pension roll in
accordance with the writ, and immediately adopted a reso-
lution ordering him to appear before two physicians of the
Pension Board 'for examination as to whether the physical
disability upon which he was retired on October 6, 1903,
has ceased.' He was excused from appearing on this occa-
sion but later he was directed to appear before the Board on
September 27, 'for the purpose of enabling the Board to
determine whether or not the disability because of which he
was retired on pension has ceased, and whether or not he
should be restored to service in the rank occupied by him
at the time of his retirement.' The matter was continued
by consent from time to time until November 15, 1920, when

petitioner appeared before the Board and certain proceedings were had to be hereinafter mentioned.

"Petitioner applied to the Superior Court for a writ of mandate and also for a writ of prohibition. After issue joined trial was had with the result noted in the first paragraph of this opinion.

"Defendants contend that this case is a direct challenge of the power of the Board of Police Commissioners to try a member of the department, and say that two simple questions are presented for decision as follows:

" '1. Does the charter of San Francisco give the power to the Board of Police Commissioners, sitting as trustees of the compensation fund, to determine in the first instance whether or not a pensioner's disability has ceased?

" '2. Can a police officer charged with an offense against the rules of the department openly defy the Board, refuse to be tried and prevent his trial by a writ of prohibition?'

" (1) The charter commits the administration of the pension fund to the Board of Police Commissioners sitting as trustees of the Pension Fund. The authority of the Board is found in Chapter X, Article VIII, of the charter relating to Police Relief and Pension Fund, and defendants argue that section 3 thereof gives to the Board the power to inquire into petitioner's condition in a case where it is believed that a pensioner's disability has ceased. What defendants are really contending for is the right of the Board of Police Commissioners, sitting as Trustees of the Pension Fund, to exercise judicial powers. This question was fully and completely answered by the Supreme Court in the case of *French* v. *Cook,* 173 Cal. 126 [160 Pac. 411], and by this court in *Sheehan* v. *Board of Police Commissioners,* 47 Cal. App. 29 [190 Pac. 51], involved in the instant proceeding. In *French* v. *Cook* the Supreme Court points out that there is no provision in the present charter of San Francisco confiding to the Board of Police Commissioners acting in any of its capacities, the power to finally determine any question of fact in connection with such a pension. (*Sheehan* v. *Board of Police Commissioners, supra,* at page 35.) 'The Board is apparently in the same position,' says the Supreme Court in *French* v. *Cook, supra,* 'with relation to such matter as is any officer required by law to do a pre-

. scribed act in a certain contingency where no certain method is provided by law for the ascertainment of the facts. Under such circumstances it may then be true that there is uncertainty or dispute as to the facts, but in such a case the only resort of the officer is such investigation as he may be able to himself make for the purpose of determining his own course of action. His determination as to the facts, however, is not effectual for any other purpose. If not satisfied as to the evidence of the essential facts, he may refuse to act until required to do so by the judgment of some tribunal invested with the power to finally determine such controversy, but before such tribunal, any conclusion to which he may have come on the facts has no legal force whatever. The sole question there is whether the facts are in reality such as to require the performance of the act, and this altogether regardless of the officer's conclusion as to the facts. The party having a vested right in the performance of the act if the facts are as claimed by him has also the right to have his claim as to the facts judicially determined. The functions of the Board in such a matter as this are really ministerial only and come under the same principle as would apply with the case of county or city auditor in so far as any finality to his conclusions are concerned. . . . As we read the charter it gives no judicial function whatever to the Board in any such matter as this, confers no authority to hear and determine a controversy in a judicial sense.'

[1] "The foregoing language of the Supreme Court is quite clear, and further discussion seems futile, but answering categorically the first question propounded by defendants, we may say that we are of the opinion that the San Francisco charter gives the power to the Board of Police Commissioners, sitting as Trustees of the Pension Fund, to determine in the first instance whether or not the pensioner's disability has ceased. Such determination, however, is not judicial in character, has no·legal force whatever as such, and amounts to nothing more than an indication of the Board's course of action in the premises.

[2] "(2) In answering defendant's second question we have in mind that petitioner has a vested right to retain his place upon the retired list, and to have his pension continued until ·his disabilities shall have ceased. (*Sheehan* v.

*Board of Police Commissioners, supra,* at page 34.) One having such a vested right is entitled to a judicial determination by a court of competent jurisdiction of the facts upon which it is claimed the right has ceased.

"Defendants charge that petitioner defied the Board, and characterize his conduct as contemptuous. Unassailed findings of the trial court show that 'the petitioner appeared before said Board of Police Pension Fund Commissioners 'and informed and stated to said board that his disability still existed and had not ceased, and that he objected to said board hearing or determining said matter on the ground that said board had no jurisdiction to hear or determine said matters; that he objected to being examined by any doctor unless his own doctor, Dr. John Gallwey, was present; that he consented to being examined by Dr. Shumate, one of respondents who was a practicing physician, and that he was willing to submit to an examination at which Dr. John Gallwey was present, and wished to have Dr. Gallwey present; that except as aforesaid, he refused to submit himself for an examination.' Then followed a colloquy between petitioner and the president of the board, after which the former was excused from the hearing. There is nothing in the record showing defiance or contemptuous conduct on the part of petitioner. He simply stated and maintained, as was his privilege in the preservation of his rights, that he objected to the board hearing or determining the matter on the ground that it was without jurisdiction. Defendants' contention that petitioner must first exhaust his remedies within the police department falls with the holding in *French* v. *Cook, supra,* that 'to hold in accord with this claim in this connection would be, as we read the charter, to hold that any official authorized and required by law to do a prescribed act upon a prescribed contingency where no method is provided for the ascertainment of the facts, is invested with the power to judicially determine the facts and that his conclusion is a judicial determination as to the facts. Such has never been declared to be the law.'

"That an attempt was made at a judicial determination of the matter by the board is shown by the following quotation from defendant's brief:

" 'The petitioner was regularly cited before the Board, he was present in person and was represented by counsel. The findings show that all the steps were regularly taken and the Board found upon the evidence taken. A resolution was adopted by the Board sitting as Trustees of the Pension Fund, and also by the Board sitting as Police Commissioners, so that there can be no question of the capacity in which they acted. By this resolution it was declared that the disability of petitioner had ceased, and he was ordered to report to the Chief of Police for active duty. Having failed to so report he was regularly cited for insubordination and his trial proceeded precisely as provided by the charter.'

"The findings of the trial court are quite lengthy and contain not only a complete account of proceedings had before the Police Boards, but particularly detail the facts upon which the trial court based its conclusions. The trial court found, among other things, 'that petitioner has never recovered from his said injuries, incapacity and disability since he was originally retired from said department and placed upon said pension roll, and that his physical capacity and ability to perform any service in said department as patrolman or otherwise, has never improved; he has never recovered from his injuries originally sustained by him and his said disability has progressively since increased and has never ceased and now exists and is permanent.' None of the findings are attacked and all are supported by the evidence.

[3] "Reversal is urged upon the ground that the trial court permitted petitioner's physician to testify as to the competency of petitioner to perform police duty. The evidence shows that the physician had been attending petitioner since 1903; that petitioner was suffering from a condition affecting his nervous system and giving rise to epileptic seizures; that these attacks were directly traceable to the head injury which petitioner sustained at the time of the accident, and which occasioned his retirement. Over the objection of defendants the trial court permitted the witness to give his opinion as to the competency of petitioner to perform police duty. The physician based his opinion upon facts personally observed by him, which facts were stated by him on his direct and cross examination. The

physician witness was admittedly skilled in the science of pathology, and by reason of his knowledge in such matters and because of the facts within his personal knowledge regarding petitioner's condition, he was able to give the trial court an opinion which might be entitled to some weight. (*Lemley* v. *Doak Gas Engine Co.*, 40 Cal. App. 146, 152 [180 Pac. 671].) We do not think that defendants were prejudiced by the ruling of the trial court in admitting this evidence, for the physician's testimony was not the only evidence before the court as to petitioner's physical condition. Petitioner himself testified that the disabilty for which he was retired still exists and that he has suffered from recurring epileptic seizures without warning. Defendants offered no evidence.

"The cases of *French* v. *Cook*, *supra*, and *Sheehan* v. *Board of Police Commissioners*, *supra*, definitely settle the question of the powers of the defendants, when acting in a situation such as is presented by the facts of this case. [4] Briefly stated, the law is, that the defendants, acting in any capacity, have no judicial powers; that such powers as they have are ministerial only. The writ of mandate was properly granted.

[5] "As the board was without jurisdiction to judicially determine the question as to whether or not petitioner's incapacity had ceased, it follows that the charge of insubordination was without foundation. [6] Insubordination can rightfully be predicated only upon the refusal to obey some order which a superior officer is entitled to give and entitled to have obeyed. (*Garvin* v. *Chambers*, 195 Cal. 212 [232 Pac. 696].)"

For the reasons stated in the foregoing opinion it is ordered that the judgment referred to therein be and the same is affirmed.

Lawlor, Acting C. J., Lennon, J., Waste, J., Shenk, J., and Richards, J., concurred.

Rehearing denied.

Seawell, J., and Shenk, J., dissented.