[No. 13198. In Bank. — September 2, 1889.]

JAMES C. PENNIE, ADMINISTRATOR, ETC., PETITIONER, *v.* C. REIS, TREASURER OF THE CITY AND COUNTY OF SAN FRANCISCO, RESPONDENT.

SAN FRANCISCO — POLICE LIFE AND HEALTH INSURANCE FUND — REPEAL OF STATUTE — MERGER OF FUND — CONSTITUTIONAL LAW. — The act of April 1, 1878, creating a police life and health insurance fund out of part of the monthly salaries of police-officers in the city and county of San Francisco, was repealed by the act of March 4, 1889, creating a police relief, health, and life insurance and pension fund, and merging the former fund in the latter, and such repeal and merger was constitutional and valid as against the legal representatives of a member of the police force whose salary was in part detained under the former act, but who did not die until after the passage of the latter act.

ID. — DUE PROCESS OF LAW — VESTED RIGHTS — SALARY OF OFFICER. — Such repeal and merger did not deprive the police-officer of any property without due process of law, or impair any vested right. A public officer whose term and compensation are not fixed by the constitution has no contract by which he can hold his office or salary against the legislative will, and a repealing statute destroying a mere expectancy under a former statute, depending upon the contingency of the death of such officer, does not affect a vested right, if the death does not occur before the statute is repealed.

ID. — REPEAL OF STATUTE BY IMPLICATION. — A repeal of a former statute by necessary implication takes place whenever it becomes apparent by subsequent legislation that the legislature does not intend the former act to remain in force, or the acts are so inconsistent that both cannot stand together.

ID. — TITLE OF ACT — SPECIAL COMMISSION — EXTRA COMPENSATION TO PUBLIC OFFICER. — The act of March 4, 1889, is sufficient as to its title; does not create "a special commission" within the prohibition of section 13 of article 11 of the state constitution; nor does it grant an extra compensation to any public officer, or make to him any gift of public money; but is in all respects valid and effective.

APPLICATION for a writ of mandate to the treasurer of the city and county of San Francisco. The facts are stated in the opinion of the court.

*Naphtaly, Freidenrich & Ackerman,* and *Alfred Clarke,* for Petitioner.

*Davis Louderback,* for Respondent.

McFARLAND, J. — This is a petition for a writ of mandate to compel the treasurer of the police life and health insurance fund of the city and county of San Francisco to pay petitioner, as administrator of Edward A. Ward, deceased, the sum of one thousand dollars.

On April 1, 1878, an act of the legislature was approved in relation to the police force of the city and county of San Francisco. It provided (section 2), among other things, that the compensation of police-officers "shall not exceed" $102 per month, and that the treasurer "shall retain from the pay of each police-officer the sum of $2 per month, to be paid into a fund to be known as the police life and health insurance fund, which shall be administered as is provided in sections 9 to 13, inclusive, of this act." These last-named sections provide, generally, that the mayor, auditor, and treasurer of the city and county shall constitute the police life and health insurance board; that such board shall invest the moneys of the fund in certain securities, and that upon the death of a member of the police force there shall be paid to his legal representatives by said treasurer the sum of one thousand dollars.

The said deceased, Edward A. Ward, was a member of said police force at and before the time of the passage of said act of April 1, 1878, and continued to be a member of said force until the time of his death, which occurred March 13, 1889.

But before his death there went into effect an act of the legislature, approved March 4, 1889, entitled "An

act to create a police relief, health, and life insurance and
pension fund in the several counties, cities and counties,
cities, and towns of the state." This act is very compre-
hensive and has many details. It provides, generally,
for a police relief and pension fund, and for a board to
manage it; for pensions to persons over sixty years old
who have been in the service for a certain period, and
to those who become disabled in the performance of
their duties, and to the widows or children of those who
lose their lives in the performance of such duties; for
the payment of a certain sum of money to the widows or
children of those who die from natural causes after they
have served ten years, and for other benefits to mem-
bers of the police force not necessary to be here men-
tioned. Section 13 of the act provides that "any police
life and health insurance fund, or any fund provided
by law, heretofore existing in any county, city and
county, city, or town, for the relief or pensioning of
police-officers, or their life or health insurance, or for
the payment of a sum of money on their death, shall be
merged with, paid into, and constitute a part of the fund
created under the provisions of this act." Section 15
provides that all "all acts or parts of acts in conflict
with the provisions of this act are hereby repealed."
Under this act the respondent refuses to pay the money
demanded by the administrator of the said Ward, de-
ceased.

The petitioner makes numerous attacks on the valid-
ity of said last-named act, and upon its efficiency to
accomplish the purpose for which it was evidently in-
tended. We will notice a few of them.

1. The main contention of petitioner is, that the act
is in violation of the provisions of the constitutions of
the United States and of this state, that no person shall
be deprived of property without due process of law.
This contention goes upon the theory that the deceased
had a vested property right in the thousand dollars of

public money which the statute had at one time directed to be paid to his legal representative upon the happening of the contingency of his death. Had he died while the law still directed such payment, a different question would have been presented. He had a mere expectancy which could have none of the elements of a vested right until the contingency contemplated by the statute had happened; but when that event came there was no statute which gave it any significance. A public officer, at least one whose term and compensation are not prescribed by the constitution, has no contract by which he can have or hold either his office or his salary against the legislative will. In *Miller* v. *Kister*, 68 Cal. 144, this court say: "But it is well settled that salaried public offices created by the legislature are not held by contract or grant. The legislature has full control over them, unless restricted by the constitution, and may abolish them altogether, or impose upon them new duties, or reduce their salaries." And such an officer "accepts the office with the direct understanding that during his term of office the legislature may modify or amend the acts concerning fees of office without impairing any legal right acquired by him by virtue of his election and entry upon the duties of his office." (*Miner* v. *Solano Co.*, 26 Cal. 118; see also *Attorney-General* v. *Squires*, 14 Cal. 13; *People* v. *Haskell*, 5 Cal. 357.) The said act of March 4, 1889, therefore, did not interfere with any vested right, and is not obnoxious to the constitutional principle invoked by petitioner.

2. It is contended that the said act last named did not repeal the provision of said act of April 1, 1878, under which petitioner claims. It is true that it does not expressly refer to that part of the former act, and repeal it in terms; but it repeals it by necessary implication. "The latter takes place whenever by subsequent legislation it becomes apparent that the legislature did not intend the former act to remain in force."

(*Christy* v. *B. S. Sacramento Co.*, 39 Cal. 1.)   And it is apparent that the legislature, when passing the act of 1889, did not intend the act of 1878, so far, at least, as said provision is concerned, to remain in force.   The two acts, with respect to the matter before us, are utterly inconsistent and cannot both stand.   The provision of section 24 of article 4 of the state constitution, about revising or amending a law by reference to its title, applies clearly to acts which are in terms revisory or amendatory of some former act; it does not apply to an independent act.   When two independent acts are incurably inconsistent and contradictory, there is only one rule to follow, and that is, to give effect to the latest expression of the legislative will.

The two foregoing points are the main ones presented by petitioner; but his counsel makes one or two other points in his brief, and suggests, or intimates, a number of others, which we have no time to notice here in detail.   We will content ourselves with saying that, in our opinion, the title of the said act of March 4, 1889, is sufficient; that it does not create a "special commission" within the prohibition of section 13 of article 11 of the state constitution; that it is not violative of the prohibitions in the constitution of granting an "extra compensation," etc., to any public officer, or increasing such compensation, or making any gift of public money; and that, so far, at least, as those part of said act which affect the rights of petitioner are involved, we see no legal objection to the validity and efficiency of said act.

The prayer of the petitioner is denied, and the writ dismissed.

WORKS, J., THORNTON, J., and PATERSON, J., concurred.